# *IN THE DISTRICT COURT OF THE UNITED STATES*

# *for the Western District of New York*

JULY 2020 GRAND JURY
(Impaneled July 31, 2020)

**THE UNITED STATES OF AMERICA**

**INDICTMENT**

*-vs-*

Violations:
Title 18, United States Code,
Sections 1349, 1344, and 1957
(5 Counts and 4 Forfeiture Allegations)

**LARRY D. JORDAN II**
(Counts 1, 2, and 5) and
**SUTUKH EL a/k/a Curtis Jordan
a/k/a Hugo Hurt a/k/a Hugo Hermes
Hurtington**
(Counts 1 - 5)

## INTRODUCTION

### The Grand Jury Charges That:

At all times relevant to this Indictment:

**The Defendants**

1. Defendant LARRY D. JORDAN II ("JORDAN") was a resident of Lancaster, New York.

2. Defendant SUTUKH EL a/k/a Curtis Jordan a/k/a Hugo Hurt a/k/a Hugo Hermes Hurtington ("SUTUKH EL") was a resident of Buffalo, New York.

3. JORDAN and SUTUKH EL were brothers.

**Related Entities**

4. 5 Stems L.L.C. was a limited liability company that was incorporated in Indiana on or about June 18, 2013. JORDAN was listed as the registered agent.

5. 5 Stems Inc was a cell tower installation and network maintenance corporation that was incorporated in Wyoming on or about February 21, 2019. JORDAN was listed as the registered agent.

6. 5 Stems of Kentucky, L.L.C. was a limited liability company that was incorporated in Kentucky on or about March 14, 2014. The company dissolved on or about September 12, 2015, and was reinstated on or about May 12, 2020. The application for reinstatement was signed by JORDAN on or about April 24, 2020. JORDAN was listed as the registered agent.

7. FLE LLC was a music and entertainment limited liability company that was incorporated in New York on or about April 3, 2014. SUTUKH EL was listed as the registered agent.

8. HHDonDeck was a corporation that was incorporated in Wyoming on or about December 2, 2019. On or about April 1, 2020, HHDonDeck was administratively dissolved because it did not have a registered agent. SUTUKH EL was listed as the incorporator.

9.      Standard Ascension Towers Group Corp. ("Standard Ascension") was a corporation that was incorporated in New York on or about December 8, 2015. "Sir Larry Jordan" was listed as the registered agent.

**The Small Business Administration**

10.     The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

**The Paycheck Protection Program**

11.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 that was designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

12.     To obtain a PPP loan, a qualifying business was required to submit a PPP loan Application (SBA Form 2483). The loan application required that it be signed by an authorized representative of the business. The loan application also required the business (through its authorized representative) to acknowledge the program rules and make certain

affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were sometimes required to provide documentation showing their payroll expenses.

13. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100 percent guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

14. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan were eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

### Relevant Lending Institutions and Other Financial Institutions

15. Evolve Bank & Trust ("Evolve") was a federally insured financial institution based in Tennessee. Evolve was authorized by the SBA to participate as a PPP lender to small businesses. Evolve approved a PPP application submitted on behalf of 5 Stems Inc.

16. Regions Financial Corporation ("Regions") was a federally insured financial institution based in Alabama. Regions held the account into which PPP funds were transferred after Evolve approved a PPP application submitted on behalf of 5 Stems Inc.

17. Bank of America, N.A ("Bank of America") was a federally insured financial institution based in North Carolina. Bank of America held accounts into which PPP funds were transferred after Evolve approved a PPP application submitted on behalf of 5 Stems Inc.

18. Lendio was a financial technology company based in Utah. Lendio participated in the SBA's PPP by, among other things, receiving PPP loan applications and matching those PPP loan applications with potential SBA approved lenders.

19. TD Ameritrade was a brokerage firm that offered an electronic platform for trading financial assets. TD Ameritrade was based in Nebraska. TD Ameritrade held an account into which PPP funds were transferred after Evolve approved a PPP application submitted on behalf of 5 Stems Inc.

## COUNT 1

### (Conspiracy to Commit Wire Fraud and Bank Fraud)

### The Grand Jury Further Charges That:

1. The allegations of the Introduction of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. Beginning in or around April 2020, the exact date being unknown to the Grand Jury, and continuing to in or around September 2020, in the Western District of New York, and elsewhere, the defendants, LARRY D. JORDAN II and SUTUKH EL a/k/a Curtis Jordan a/k/a Hugo Hurt a/k/a Hugo Hermes Hurtington, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown to the Grand Jury, to:

   a. devise and intend to devise a scheme and artifice to defraud financial institutions and the SBA and to obtain money and property from financial institutions and the SBA by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343; and

   b. execute a scheme and artifice to defraud financial institutions and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, financial institutions by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

**OVERVIEW OF THE CONSPIRACY AND THE SCHEME TO DEFRAUD**

3. Beginning in or around April 2020, and continuing until in or around September 2020, the defendants conspired to execute, did execute, and attempted to execute, a scheme and artifice to defraud financial institutions and the SBA in connection with PPP loans.

4. As part of both the conspiracy and the scheme, the defendants submitted, and caused to be submitted, eight false and fraudulent PPP loan applications in the names of certain entities, as specified in the chart below, to Evolve and Lendio. One of the eight PPP loan applications was approved, based on materially false and fraudulent pretenses, representations, and promises. As a result of those materially false and fraudulent pretenses, representations, and promises, a PPP loan in the amount of approximately $605,200 was subsequently funded.

| Application Number | Business Name | Lender | Business Representative on Application | Approximate Loan Amount Sought | Funded |
|---|---|---|---|---|---|
| 1 | 5 Stems Inc | Evolve | JORDAN | $605,333 | No |
| 2 | 5 Stems Inc | Evolve | JORDAN | $605,333 | Yes |
| 3 | 5 Stems of Kentucky, L.L.C. | Lendio | JORDAN | $4,978,700 | No |
| 4 | 5 Stems L.L.C. | Evolve | SUTUKH EL | $425,416 | No |

| Application Number | Business Name | Lender | Business Representative on Application | Approximate Loan Amount Sought | Funded |
|---|---|---|---|---|---|
| 5 | 5 Stems L.L.C. | Lendio | SUTUKH EL | $425,400 | No |
| 6 | FLE LLC | Lendio | JORDAN | $185,000 | No |
| 7 | HHDonDeck | Lendio | SUTUKH EL | $81,900 | No |
| 8 | Standard Ascension | Lendio | JORDAN | $287,100 | No |

**PURPOSE OF THE CONSPIRACY**

5.      It was the purpose of the both the conspiracy and the scheme for the defendants to unjustly enrich themselves and their businesses by fraudulently obtaining PPP loans by means of materially false and fraudulent pretenses, representations, and promises.

**MANNER AND MEANS OF THE CONSPIRACY**

6.      Beginning in or around April 2020, and continuing through in or around September 2020, the defendants submitted, and caused to be submitted, eight fraudulent PPP loan applications (collectively, the "PPP Loan Applications"). In support of the PPP Loan Applications, the defendants submitted, and caused to be submitted, materially false and fraudulent documentation purporting to substantiate the monthly payroll expenses and employee count reported in each of the PPP Loan Applications. This supporting documentation included false and fraudulent financial documents such as Internal Revenue

Services ("IRS") forms, in which purported payroll expenses and the number of employees were fabricated and inflated. The defendants also falsely certified on the PPP Loan Applications that the PPP loan funds would be used to retain workers and cover payroll expenses, and to make mortgage interest payments, lease payments, and/or utility payments. In fact, however, the defendants intended to, and did in fact, use the funds largely for their own personal enrichment.

7. In furtherance of both the conspiracy and the scheme, the defendants inflated the 2019 average monthly payroll and the number of employees on the PPP Loan Applications.

8. In furtherance of the both the conspiracy and scheme, the defendants submitted, and caused to be submitted, purported IRS Form 940s and IRS Form 941s in support of six of the PPP Loan Applications. The IRS Form 940s and IRS Form 941s submitted in support of those six applications were false and fraudulent.

9. In furtherance of both the conspiracy and the scheme, the defendants submitted, and caused to be submitted, false and fraudulent payroll registers in support of the PPP Loan Applications.

10. As part of the conspiracy and in furtherance of the conspiracy, the defendants communicated over text message about some of the fraudulent PPP Loan Applications.

   a. On or about April 28, 2020, JORDAN sent a text message to SUTUKH EL. The text included a screenshot of an email from Evolve, which

stated, in part, "We are pleased to inform you that your Paycheck Protection Program Loan has been approved." SUTUKH EL and JORDAN then exchanged the following text messages:

| | |
|---|---|
| SUTUKH EL: | What company is that for |
| JORDAN: | 465k |
| JORDAN: | 5 stems |
| SUTUKH EL: | We LiTT. |
| SUTUKH EL: | Super LiTT. |

b.  On or about April 28, 2020, JORDAN sent another text message to SUTUKH EL. The text included a screenshot of an email from another lender, which stated, in part, "Congratulations! Yes, we received an SBA authorization for 5 Stems, LLC. Someone from our closing department will follow up with you with a closing checklist." SUTUKH EL and JORDAN then exchanged the following text messages:

| | |
|---|---|
| SUTUKH EL: | That the same one? |
| SUTUKH EL: | 456k |
| JORDAN: | No 5 stems of Kentucky |
| SUTUKH EL: | Ohhhhhhh!! |
| SUTUKH EL: | Huh Mannnnn!!! |
| SUTUKH EL: | I know I cant get my truck painted Now! |
| JORDAN: | Bro we are good |
| SUTUKH EL: | Good Good! |
| JORDAN: | Its over |
| SUTUKH EL: | Mannnnn We really bout to take over the world |
| JORDAN: | This isn't even SAT |
| JORDAN: | I know! |

  \*  \*  \*  \*  \*  \*  \*  \*  \*

        SUTUKH EL:        Wow, we like Fake Rich

        SUTUKH EL:        I gotta get Rich Rich. we got the tools Now

c.    On or about April 28, 2020, JORDAN and SUTUKH EL also exchanged text messages about whether they would pay back a PPP loan.

        JORDAN:        We don't even have to start paying back for 2 years

        JORDAN:        Or just show what they ask us to show

        *SUTUKH EL liked the message: "Or just show what they ask us to show"*

        SUTUKH EL:        We'll be in the billions by then anyway

        SUTUKH EL:        But definitely show what needs to be shown and write that shit off!

11.    In furtherance of both the conspiracy and the scheme, the defendants fraudulently obtained approximately $605,200 in PPP loan proceeds from Evolve and used those funds for personal enrichment.

a.    On or about April 22, 2020, Application 2 (in the name of 5 Stems Inc) was approved and Evolve funded the loan in the amount of approximately $605,200. That same day, JORDAN authorized the transfer of approximately $605,200 in PPP loan funds to a bank account in the name of 5 Stems Inc at Regions.

b.    After the PPP loan funds were deposited into the 5 Stems Inc account at Regions, the defendants transferred or directed the transfer of the loan proceeds to each other, or to entities controlled by the defendants, enabling them to enrich themselves from the loan proceeds.

**All in violation of Title 18, United States Code, Section 1349.**

## COUNT 2

### (Bank Fraud)

### The Grand Jury Further Charges That:

1. The allegations of the Introduction of this Indictment and Count 1 are re-alleged and incorporated by reference as though set forth herein.

2. In or around April 2020, the exact date being unknown to the Grand Jury, in the Western District of New York, and elsewhere, the defendants, LARRY D. JORDAN II and SUTUKH EL a/k/a Curtis Jordan a/k/a Hugo Hurt a/k/a Hugo Hermes Hurtington, did knowingly execute, and attempt to execute, a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, to wit, Evolve, by means of materially false and fraudulent pretenses, representations, and promises.

**All in violation of Title 18, United States Code, Sections 1344(2) and 2.**

## COUNTS 3 – 5

### (Engaging in Monetary Transactions with Criminally Derived Property)

### The Grand Jury Further Charges That:

1. The allegations of the Introduction and Counts 1 and 2 of this Indictment are re-alleged and incorporated by reference as though set forth herein.

2. On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendants, LARRY D. JORDAN II and SUTUKH EL a/k/a Curtis

Jordan a/k/a Hugo Hurt a/k/a Hugo Hermes Hurtington, did knowingly, intentionally, and unlawfully engage in, and attempt to engage in, monetary transactions, by, through, and to a financial institution engaged in, and the activities of which affected, interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, bank fraud, in violation of Title 18, United States Code, Section 1344(2), and that while engaging in, and attempting to engage in, such monetary transactions, knew that the funds and monetary instruments involved in the transactions constituted, and were derived from, proceeds obtained from a criminal offense, such transactions consisting of the following and occurring on or about the below-identified dates:

| Count | Defendant(s) | Approximate Date | Financial Transaction | Approximate Amount |
|---|---|---|---|---|
| 3 | SUTUKH EL | April 29, 2020 | Wire transfer from account ending in 8971 at Regions in the name of 5 Stems Inc to Parkview Auto for the purchase of a 2011 Chevrolet Silverado | $14,348 |
| 4 | SUTUKH EL | May 1, 2020 | Wire transfer from account ending in 1512 at Bank of America in the name of FLE LLC to an account ending in 3054 at TD Ameritrade in the name of SUTUKH EL | $50,000 |

| 5 | JORDAN and SUTUKH EL | June 16, 2020 | Teller transfer from account ending in 1713 at Bank of America in the name of HHDonDeck to an account ending in 6993 at Bank of America in the name of JORDAN | $20,000 |

**All in violation of Title 18, United States Code, Sections 1957 and 2.**

# FIRST FORFEITURE ALLEGATION

**(Proceeds Forfeiture)**

**The Grand Jury Alleges That:**

1.  Upon conviction of one or both of the offenses set forth in Counts 1 and 2 of this Indictment, the defendant, SUTUKH EL a/k/a Curtis Jordan a/k/a Hugo Hurt a/k/a Hugo Hermes Hurtington, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following:

**A.  MONETARY SUM**

The approximate sum of $556,200 which sum of money is equal to the total amount of proceeds obtained as a result of the offense for which the defendant, SUTUKH EL a/k/a Curtis Jordan a/k/a Hugo Hurt a/k/a Hugo Hermes Hurtington is charged in Counts 1 and 2. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

### B. BANK AND INVESTMENT ACCOUNTS

   i. $283,774.12 in funds from bank account 0201308971 in the name of 5 Stems Inc at Regions;

   ii. $7,815.95 in funds from Bank of America account 483078011512 in the name of FLE LLC at Bank of America;

   iii. $138,811.24 in funds from account #488263054 in the name of TD Ameritrade; and

   iv. $4,428.14 in funds from bank account 483068671713 in the name of Hhdondeck at Bank of America.

### C. VEHICLE

   i. One (1) 2011 Chevrolet Silverado, VIN: 1GCRKSE30BZ457955, Titled and Registered To Luther L. Jordan.

If any of the property described above, as a result of any act or omission of the defendant:

1. cannot be located upon the exercise of due diligence;
2. has been transferred or sold to, or deposited with, a third person;
3. has been placed beyond the jurisdiction of the Court;
4. has been substantially diminished in value; or
5. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).**

## SECOND FORFEITURE ALLEGATION

### (Proceeds Forfeiture)

### The Grand Jury Further Alleges That:

1. Upon conviction of one or both of the offenses set forth in Counts 1 and 2 of this Indictment, the defendant, LARRY D. JORDAN II, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following:

### A. MONETARY SUM

The approximate sum of $49,000 which sum of money is equal to the total amount of proceeds obtained as a result of the offenses for which the defendant, LARRY D. JORDAN II, is charged in Counts 1 and 2. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above, as a result of any act or omission of the defendant:

1. cannot be located upon the exercise of due diligence;
2. has been transferred or sold to, or deposited with, a third person;
3. has been placed beyond the jurisdiction of the Court;
4. has been substantially diminished in value; or
5. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).**

## THIRD FORFEITURE ALLEGATION

**(Money Laundering Forfeiture)**

**The Grand Jury Further Alleges That:**

1. Upon conviction of one or more of the offenses set forth in Counts 3 through 5 of this Indictment, the defendant, SUTUKH EL a/k/a Curtis Jordan a/k/a Hugo Hurt a/k/a Hugo Hermes Hurtington, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), the following property:

**A.     PROPERTY**

All right, title and interest in any and all property involved in violations of Title 18, United States Code, Section 1957 for which the defendant is convicted, and all property traceable to such property, including the following: 1) all property or other property traceable to such property, that was the subject of each transaction, transmission or transfer in violation of Section 1957; 2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and 3) all property or other property traceable to such property, used in any manner or part to commit or to facilitate the commission of those violations.

### B. MONETARY AMOUNT

The sum of approximately $84,348 United States currency, which sum of money is equal to the total amount of money involved in the money laundering offenses for which the defendant, SUTUKH EL a/k/a Curtis Jordan a/k/a Hugo Hurt a/k/a Hugo Hermes Hurtington, is charged. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

### C. SPECIFIC ASSETS

The following specific assets which have been identified as property involved in a money laundering transaction or transactions:

**BANK AND INVESTMENT ACCOUNTS:**

i. $138,811.24 in funds from account #488263054 in the name of SUTUKH EL at TD Ameritrade.

**VEHICLE**

i. One (1) 2011 Chevrolet Silverado, VIN: 1GCRKSE30BZ457955, Titled and Registered To Luther L. Jordan.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant

1. cannot be located upon the exercise of due diligence;
2. has been transferred or sold to, or deposited with, a third person;
3. has been placed beyond the jurisdiction of the Court;
4. has been substantially diminished in value; or
5. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 982(a)(1) and Title 21, United States Code, Section 853(p).**

## FOURTH FORFEITURE ALLEGATION

**(Money Laundering Forfeiture)**

**The Grand Jury Further Alleges That:**

1. Upon conviction the offense set forth in Count 5 of this Indictment, the defendant, LARRY D. JORDAN II, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), the following property:

   A. **PROPERTY**

   All right, title and interest in any and all property involved in a violation of Title 18, United States Code, Section 1957 for which the defendant is convicted, and all property traceable to such property, including the following: 1) all property or other property traceable to such property, that was the subject of each transaction, transmission or transfer in violation of Section 1957; 2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and 3) all property or other property traceable to such property, used in any manner or part to commit or to facilitate the commission of those violations.

   B. **MONETARY AMOUNT**

   The sum of approximately $20,000 United States currency, which sum of money is equal to the total amount of money involved in the money laundering offense for which the

defendant, LARRY D. JORDAN II is charged. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant

1. cannot be located upon the exercise of due diligence;
2. has been transferred or sold to, or deposited with, a third person;
3. has been placed beyond the jurisdiction of the Court;
4. has been substantially diminished in value; or
5. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Section 982(a)(1), and Title 21, United States Code, Section 853(p).**

DATED: Buffalo, New York, January 27, 2021.

| | |
|---|---|
| JAMES P. KENNEDY, JR.<br>United States Attorney | DANIEL S. KAHN<br>Acting Chief, Fraud Section |
| BY: S/CHARLES M. KRULY<br>Assistant United States Attorney<br>United States Attorney's Office<br>Western District of New York<br>138 Delaware Avenue<br>Buffalo, New York 14202<br>716-843-5838<br>Charles.Kruly@usdoj.gov | BY: S/DELLA G. SENTILLES<br>Trial Attorney<br>Criminal Division, Fraud Section<br>U.S. Department of Justice<br>1400 New York Avenue, N.W.<br>Washington, D.C. 20005<br>202-445-8793<br>Della.Sentilles@usdoj.gov |

A TRUE BILL:

S/FOREPERSON