IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

21-CR-009-JLS

SUTUKH EL a/k/a Curtis Jordan
a/k/a Hugo Hurt a/k/a Hugo Hermes Hurtington,

Defendant.

---

## PLEA AGREEMENT

The United States Attorney for the Western District of New York and the United States Department of Justice, Criminal Division, Fraud Section (together, "the government") and the defendant, SUTUKH EL a/k/a Curtis Jordan a/k/a Hugo Hurt a/k/a Hugo Hermes Hurtington, hereby enter into a plea agreement with the terms and conditions as set out below.

### I.   THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to plead guilty to Count 1 of the Indictment which charges a violation of Title 18, United States Code, Section 1349 (conspiracy to commit bank fraud and wire fraud) for which the maximum possible sentence is a term of imprisonment of 30 years, a fine of $1,000,000 or twice the gross pecuniary gain or loss, whichever is greater, a mandatory $100 special assessment and a term of supervised release of up to 5 years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant will also admit to the First Forfeiture Allegation in the Indictment, which alleges that a monetary sum, bank and investment accounts, and a vehicle are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

3. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 3 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

4. The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

   a. Two or more persons, in some way or manner, agreed to accomplish a common and unlawful plan to commit a federal fraud crime, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, as alleged in the Indictment; and bank fraud, in violation of Title 18, United States Code, Section 1344, as alleged in the Indictment; and

   b. The defendant knew the unlawful purpose of the plan and willfully joined in it.

## FACTUAL BASIS

5.  The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

   a. The Paycheck Protection Program ("PPP") was created pursuant to the Coronavirus Aid, Relief, and Economic Security Act to provide forgivable loans to small businesses that were affected by the COVID-19 pandemic. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application. The loan application required that it be signed by an authorized representative of the business. The loan application also required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

   b. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100 percent guaranteed by the U.S. Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan were eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

   c. Evolve Bank & Trust ("Evolve") was a federally insured financial institution based in Tennessee.

   d. Lendio was a financial technology company based in Utah. Lendio participated in the SBA's PPP by, among other things, receiving PPP loan applications and matching those PPP loan applications with potential SBA-approved lenders.

   e. Between in or around April 2020 and in or around September 2020, the defendant, SUTUKH El, a/k/a /k/a Curtis Jordan a/k/a Hugo Hurt a/k/a Hugo Hermes Hurtington, knowingly and unlawfully combined,

conspired, and agreed with his brother, Larry D. Jordan II ("Jordan"), to submit eight materially false and fraudulent PPP loan applications on behalf of companies owned or controlled by the defendant and/or Jordan.

f. Three of the fraudulent PPP loan applications were submitted to Evolve and the other five PPP loan applications were submitted to Lendio.

g. The eight PPP applications submitted by the defendant and Jordan contained materially false statements about the 2019 payroll expenses of each company. These false statements were used to calculate the amount of PPP funds to which the applicant-companies would be entitled.

h. To corroborate payroll information in the PPP applications, the defendant and Jordan submitted false Internal Revenue Service ("IRS") forms. In truth, these IRS forms had never been filed with the IRS. The defendant and Jordan also submitted fraudulent payroll registers that purported to identify the names, personal information, and salary of the employees identified on the PPP application.

i. For example, on or about April 17, 2020, Jordan caused to be submitted a PPP loan application on behalf of 5 Stems Inc to Evolve. The application, which was signed by Jordan, represented that in 2019, 5 Stems Inc had 194 employees and an average monthly payroll of $242,133.33. In truth, however, 5 Stems Inc had nine employees in 2019 and paid those employees a total of approximately $57,380 for all of 2019. The PPP application was supported by a fraudulent IRS Form 940 and a fraudulent IRS Form 941 that purported to corroborate payroll information in the PPP loan application. The PPP loan application was also supported by a payroll register that identified approximately 204 employees of 5 Stems Inc. Each purported employee, however, had the same start date of January 1, 2019 and each employee was identified only by first name and street address. Approximately 13 of the purported employees had the same Social Security number as other purported employees.

j. Evolve approved this application and funded the loan with its own money in the amount of $605,200. At Jordan's direction, the funds were then wired to a bank account in the name of 5 Stems Inc whose sole signatory was the defendant. After the loan was funded, the defendant disbursed $100,000 to another bank account in the name of a company, FLE LLC, controlled by the defendant. The defendant then disbursed approximately $84,000 of those funds for his own investments. The defendant also disbursed, in total, approximately $49,000 to Jordan,

4

which Jordan spent on personal expenses and home improvements. As the Chief Financial Officer of 5 Stems Inc, the defendant knew that the 5 Stems Inc PPP loan application was based on materially false and fraudulent representations about 5 Stems Inc's 2019 payroll expenses.

### III. SENTENCING GUIDELINES

6. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

#### BASE OFFENSE LEVEL

7. The government and the defendant agree that Guidelines § 2X1.1(a) and § 2B1.1(a)(1) apply to the offense of conviction and provide for a base offense level of 7.

#### SPECIFIC OFFENSE CHARACTERISTICS
#### U.S.S.G. CHAPTER 2 ADJUSTMENTS

8. The government maintains that the specific offence characteristic in Guideline § 2B1.1(b)(1)(J) applies and that there is an 18-offense level increase.

9. The defendant specifically reserves the right at the time of sentencing to argue that Guideline § 2B1.1(b)(1)(J) does not apply and that, instead, Guideline § 2B1.1(b)(1)(H) applies. The government reserves the right to oppose the defendant's argument. If the Court agrees with the defendant that Guideline § 2B1.1(b)(1)(H) applies, the defendant agrees that there is a 14-offense level increase.

10. The defendant specifically reserves the right at the time of sentencing to argue that Guideline § 3B1.2(b) (minor participant) applies that that there is therefore a 2-offense level decrease. The government reserves the right to oppose the defendant's argument.

## ADJUSTED OFFENSE LEVEL

11. Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level is 25 (if the Court agrees with the government that § 2B1.1(b)(1)(J) applies and § 3B1.2(b) does not apply) or 19 (if the Court agrees with the defendant that § 2B1.1(b)(1)(H) and § 3B1.2(b) apply).

## ACCEPTANCE OF RESPONSIBILITY

12. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of either 22 (if the Court agrees with the government that § 2B1.1(b)(1)(J) applies and § 3B1.2(b) does not apply) or 16 (if the Court agrees with the defendant that § 2B1.1(b)(1)(H) and § 3B1.2(b) apply).

## VARIANCE FOR PROPOSED AMENDMENT TO SENTENCING GUIDELINES

13. It is the understanding of the government and the defendant that the United States Sentencing Commission has adopted a proposed amendment adding Guidelines § 4C1.1 (Adjustment for Certain Zero-Point Offenders) that is not yet in effect. The

government agrees that it will not oppose a two-level downward variance if (a) the Court determines that defendant meets the criteria listed in adopted Guidelines § 4C1.1; and (b) the defendant waives the right to seek a sentence reduction under 18 U.S.C. § 3582(c)(2) based on adopted Guidelines § 4C1.1.

## CRIMINAL HISTORY CATEGORY

14. It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

15. It is the understanding of the government and the defendant that:

   a. if the Court determines that § 2B1.1(b)(1)(J) applies, § 3B1.2(b) does not apply, and that defendant meets the criteria listed in adopted Guidelines § 4C1.1 such that a two-level downward variance from the applicable Guidelines range referenced in paragraph 13 is warranted, then with a total offense level of 20 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of **33 to 41** months, a fine of $15,000 to $150,000, and a period of supervised release of 2 to 5 years; and

   b. if the Court determines that § 2B1.1(b)(1)(H) and § 3B1.2(b) apply, and that defendant meets the criteria listed in adopted Guidelines § 4C1.1 such that a two-level downward variance from the applicable Guidelines range referenced in paragraph 13 is warranted, then with a total offense level of 14 and a criminal history category of I, the defendant's sentencing range would be a term of imprisonment of **15 to 21** months, a fine of $7,500 to $75,000, and a period of supervised release of 2 to 5 years.

Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

16. With the exception of the disagreement set forth in paragraphs 8, 9, and 10 of this agreement, the government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

17. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

18. In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

### IV. STATUTE OF LIMITATIONS

19. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this

agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V. REMOVAL

20. The defendant represents that he is a citizen of the United States. However, if the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI. GOVERNMENT RIGHTS AND OBLIGATIONS

21. The defendant understands that the government has reserved the right to:

   a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

   b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

   c. advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment;

   d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and

> statements by the defendant subsequent to this agreement, regarding the recommendation or factor;
>
> e. oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

22. At sentencing, the government will move to dismiss the open counts of the Indictment against the defendant.

### VII. RESTITUTION AND FINANCIAL PENALTY PROVISIONS

23. Pursuant to Title 18, United States Code, Section 3663(a)(3), the parties agree that the Court shall require restitution in the approximate amount of $605,200 as part of the defendant's sentence. The defendant understands that defendant will not be entitled to withdraw the plea of guilty based upon any restitution amount ordered by the Court.

24. The restitution amount of $605,200 stated above represents the total amount of the loss in connection to this defendant. Although the defendant shall be liable for the full amount of the loss, all of his obligation shall be joint and several with co-defendant Larry D. Jordan, II.

25. The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees

to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the United States relating to the defendant's complete financial disclosure. The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

26. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

27. The defendant understands and agrees that the Court, at the time of sentencing, will order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and will be (i) subject to immediate enforcement as provide for in 18 U.S.C Section 3613, and (ii) submitted to the Treasury Offset Program (TOP) so that any federal payment or transfer of returned property the defendant

receives may be offset and applied to federal debts but will not affect any periodic payment schedule set by the Court.

28.     The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

29.     The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

30.     To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance bond in this case, which funds shall be applied to satisfy the financial obligation(s) of the defendant pursuant to the judgment of the Court.

## VIII.  APPEAL RIGHTS

31.     The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack a term of imprisonment of 41 or fewer months, a fine equal to or less than $150,000, and a period of supervised release of 5 or

fewer years, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section VII of this agreement.

32. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

33. The government waives its right to appeal any component of a sentence imposed by the Court that includes a term of imprisonment of 15 or more months imprisonment or a fine greater than or equal to $7,500, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## IX.   FORFEITURE PROVISIONS

34. As a condition of the plea, the defendant agrees not to contest any forfeiture or abandonment proceeding that may be brought by the United States and agrees to immediately criminally forfeit all of the defendant's right, title and interest to any and all property which are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and

Title 28, United States Code, Section 2461(c), which are in the possession and control of the defendant or the defendant's nominees. That property includes:

### A. MONETARY SUM

i. The approximate sum of $556,200 in United States currency that represents proceeds that defendant obtained from his involvement in the criminal conduct, which if not readily available will become a monetary judgment and will serve as a lien against the defendant's property, wherever situated, with interest to accrue at the prevailing rate per annum until fully satisfied in the event this amount is not located.

### B. BANK AND INVESTMENT ACCOUNTS

i. $283,774.12 in funds seized from account number 0201308971 in the name of 5 Stems Inc. at Regions Financial Corporation;

ii. $7,815.95 in funds seized from account number 483078011512 in the name of FLE LLC at Bank of America;

iii. $138,811.24 in funds seized from account number 488263054 in the name of Sutukh El, A/K/A Curtis Jordan, A/K/A Hugo Hurt A/K/A Hugo Hurtington at TD Ameritrade; and

iv. $4,428.14 in funds seized from account number 483068671713 in the name of HHDonDeck at Bank of America.

### C. VEHICLE

i. One (1) 2011 Chevrolet Silverado, VIN: 1GCRKSE30BZ457955, Titled and Registered To Luther L. Jordan.

35. The defendant also agrees that the properties listed above are properly forfeitable to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C)

and Title 28, United States Code, Section 2461(c). The defendant also agrees that the monetary sum listed above is properly forfeitable to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) and based upon the acts of the defendant, it is no longer available for forfeiture pursuant Title 21, United States Code, Section 853(p) and thus the United States has the right to seek forfeiture of substitute assets of the defendant. The defendant further agrees to fully assist the government in the identification and recovery of any property subject to forfeiture, or of any property found by the government or surrendered by the defendant to satisfy such judgment, and to take whatever steps are necessary to pass clear title to the United States, including, but not limited to surrender of title and execution of any documents necessary to transfer the defendant's interest in any of the above property to the United States, as deemed necessary by the government. In addition, the defendant agrees not to contest the forfeiture of the property referred to above in any ancillary proceeding and will not file any petitions or claims with regard to the aforementioned properties and will not assist any third parties in the filing of any petitions or claims in any ancillary proceeding.

36.     The defendant understands and agrees that the Court, at the time of sentencing, will order a forfeiture money judgment which is due and payable in full immediately and subject to immediate enforcement by the United States. The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, will be used to offset any forfeiture money judgment imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance bond in this case, which funds shall be applied to satisfy the criminal forfeiture judgment.

37.     The defendant further acknowledges that if the defendant cannot pay the full amount immediately and is placed in custody, the defendant agrees that the Bureau of Prisons will have the authority to establish payment schedules to ensure payment of the money judgment. The defendant further agrees to cooperate fully in efforts to collect on the money judgment by set-off of federal payments through the Treasury Offset Program ("TOP"), execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of the money judgment without notifying defendant's counsel and outside the presence of the defendant's counsel.

38.     After the acceptance of the defendant's guilty plea, and pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the Court will issue a Preliminary Order of Forfeiture for the items listed above. The defendant hereby waives any right to notice of such Preliminary Order of Forfeiture. The defendant further consents and agrees that the Preliminary Order of Forfeiture and a Final Order of Forfeiture shall issue and become final as to the defendant prior to sentencing and agrees that it shall be made part of the defendant's sentence and included in the judgment pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure. The defendant further agrees to waive any time restrictions or requirements as provided in Title 18, United States Code, Section 983, any notice provisions in Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the

forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that the defendant understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure, at the time the guilty plea is accepted. Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

39. The defendant knowingly, intelligently, and voluntarily waives his right to a jury trial on the forfeiture of the assets. The defendant knowingly, intelligently, and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding, including any jeopardy defense or claim of double jeopardy, whether constitutional or statutory, as to this criminal proceeding or any related civil or administrative proceeding. The defendant further agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine regarding the forfeiture of assets by the United States. The defendant agrees that all of the above-described property is subject to forfeiture and waives any and all statutory and constitutional rights, including but not limited to time restrictions and notice provisions with respect to the final disposition or forfeiture of the above property.

40. The defendant agrees that forfeiture of the aforementioned properties as set forth in this agreement shall not be deemed an alteration of the defendant's sentence. Forfeiture of the defendant's property shall not be treated as satisfaction of any fine,

restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture. However, it is understood by the defendant that the government may, in its sole discretion, recommend to the Attorney General that any of the forfeited proceeds be remitted or restored to the eligible victims of the offense, pursuant to Title 18, United States Code, Section 981(e), 28 C.F.R. Pt. 9, and other applicable law, it being understood that the United States Attorney's Office has authority only to request such relief and that the final decision of whether to grant relief rests with the Department of Justice, which will make its decision in accordance with applicable law. The defendant further expressly understands that one of the factors to be considered by the Department of Justice in approving any such restoration request is whether or not the defendant has other assets in which he could pay the restitution judgment and the defendant shall have no recourse in the event the restoration request is denied.

41.     The defendant agrees that in the event this plea agreement is voided for any reason, the agreement for forfeiture, and disposition of the properties and monetary amount as set forth above survives and shall be given full force and effect.

## X.     TOTAL AGREEMENT AND AFFIRMATIONS

42.     This plea agreement represents the total agreement between the defendant, SUTUKH EL a/k/a Curtis Jordan a/k/a Hugo Hurt a/k/a Hugo Hermes Hurtington, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

TRINI E. ROSS
United States Attorney

BY: _____
CHARLES M. KRULY
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5838
Charles.Kruly@usdoj.gov

Dated: September 7, 2023

GLENN S. LEON
~~DANIEL S. KAHN~~
~~Acting~~ Chief, Fraud Section

BY: _____
ARIEL GLASNER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
202-598-2522
Ariel.Glasner@usdoj.gov

Dated: September 7, 2023

I have read this agreement, which consists of pages 1 through 19. I have had a full opportunity to discuss this agreement with my attorney, Cheryl Meyers Buth, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
SUTUKH EL a/k/a Curtis Jordan
a/k/a Hugo Hurt a/k/a Hugo Hermes
Hurtington

Defendant

Dated: September 7, 2023

_____
CHERYL MEYERS BUTH, ESQ.
Attorney for the Defendant

Dated: September 7, 2023